UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE APPLICATION OF THE ) <br> UNITED STATES OF AMERICA FOR ) <br> AN ORDER AUTHORIZING THE ) <br> INSTALLATION AND USE OF A PEN ) <br> REGISTER AND TRAP AND ) <br> TRACE DEVICE AND THE ) <br> DISCLOSURE OF RECORDS ) <br> ) | MISC. NO. ___ <br> 18 mj 1011 CSH <br><br> Filed Under Seal |

FILED
2018 JUN 22 A 10: 37
U.S. DISTRICT COURT
NEW HAVEN, CT.

## APPLICATION

The United States of America, moving by and through Anthony E. Kaplan, its undersigned counsel, respectfully submits under seal this ex parte application for an Order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of a pen register and trap and trace devices ("pen-trap device") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone numbers described in Attachment A. The government further requests the disclosure of records, including, but not limited to, subscriber information, unique telephone identifiers and toll records, as more fully described in Attachment A, for the period of October 18, 2014, to the present.

In support of this application, the United States asserts:

### LEGAL BACKGROUND

1. This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and a trap and trace device.

2. Under 18 U.S.C. § 3122(b), such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative

officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3. The undersigned applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4. The law enforcement agency conducting the investigation is the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

5. The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the ATF.

6. This is also an application pursuant to 18 U.S.C. § 2703(d) to require an order for the disclosure of records, including, but not limited to, subscriber information, unique telephone identifiers, and toll records, as more fully described in Attachment A. Cingular is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require Cingular to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

7. This Court has jurisdiction to issue the proposed Orders because it is a "court of competent jurisdiction" under 18 U.S.C. §§ 2711 and 3122(a). Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." See 18 U.S.C. §§ 2703(d), 2711(3)(A)(i) and 3127(2)(A)(i).

8. Other than the three elements described above, federal law does not require that an application for an order authorizing the installation and use of a pen register and a trap and trace device specify any facts. The relevant facts detailed below are provided to demonstrate that the Order requested falls within this Court's authority to authorize the installation and use of a pen register or trap and trace device under 18 U.S.C. § 3123(a)(1).

9. However, a court order issued pursuant to § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the Relevant Facts section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

### ADDITIONAL INFORMATION

10. A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

11. In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming

3

calls. Similar principles apply to other kinds of wire and electronic communications, as described below.

12. A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications. Individuals using cell phones contract with cellular service providers, who maintain antenna towers covering specific geographic areas. In order to transmit or receive calls and data, a cell phone must send a radio signal to an antenna tower which, in turn, is connected to a cellular service provider's network.

13. In addition to a unique telephone number, each cell phone has one or more unique identifiers stored inside it. Depending upon the cellular network and the device, the stored unique identifiers for a cell phone could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). When a cell phone connects to a cellular antenna or tower, it reveals its unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers—as transmitted from a cell phone to a cellular antenna or tower—are like the telephone number of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.

14. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-

trap devices and then used to identify the parties to a communication without revealing the communication's contents.

15.     A cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

16.     Cellular phones can connect to the Internet via the cellular network. When connecting through the cellular network, Internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

17.     These telephone numbers can include "post-cut-through dialed digits," which are numbers dialed from the cell phone after the initial call set up is completed. For example, some post-cut-through dialed digits may be the actual telephone number called, such as when a subject places a calling card, credit card, or collect call by first dialing a long-distance carrier access number and then, after the initial call is "cut through," dialing the telephone number of the destination party. That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made. In the event that the pen-trap devices capture some post-cut-through dialed digits that could be considered call content, such as account numbers or passwords, despite the government's use of reasonably

available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

## THE RELEVANT FACTS

18. The ATF New Haven Field Office is conducting an investigation into the activities of a Bloods street gang operating under the set name of Red Side Guerilla Brims. During first hand law enforcement observations, as well as during the interviews of numerous subjects, law enforcement has learned the following facts:

   a. The Red Side Guerilla Brims is an armed, violent organization, which actively engages in numerous criminal acts, to include narcotics trafficking and street level robberies of other narcotics traffickers.

   b. Delton PYLES is currently a member of the Red Side Guerilla Brims in the New Haven, CT.

   c. PYLES has been in contact with Keith YOUNG who is a high ranking member of the Red Side Guerilla Brims/

   d. PYLES has been involved in street-level sales of narcotics and has made a number of sales of crack to a confidential informant working with the ATF.

## GOVERNMENT REQUESTS

19. The conduct being investigated involves use of the Target Telephone described in Attachment A. To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from the Target Telephone. Additionally, the facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help

the United States to identify and locate PYLES and his associates and to determine the nature and scope of their activities. Accordingly, the United States requests that Cingular be directed to produce all items described in Part II of Attachment A to the proposed Order.

20. For the reasons stated above, the United States requests that the Court enter an Order authorizing installation and use of a pen-trap device that will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Telephone described in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

   a. IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

   b. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone numbers described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

   c. IP addresses of any websites or other servers to which the cell phone device or devices connected;

   d. Source and destination telephone numbers and email addresses and

   e. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).[1]

21. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8), pursuant to the proposed Order.

---

[1] In the event that the pen-trap device captures some post-cut-through dialed digits that could be considered call content, such as account numbers or passwords, despite the government's use of reasonably available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

22. The United States further requests that the Court authorize the foregoing pen-trap installation and use for a period of sixty days, pursuant to 18 U.S.C. § 3123(c)(1).

23. The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order Cingular and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the ATF pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

24. The United States further requests that the Court order Cingular, and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the ATF of any changes relating to the Target Telephone described in Attachment A, and to provide prior notice to the applicant and the ATF before terminating or changing service to the cell phone number.

25. The United States further requests that the Court order that the ATF and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

26. The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order Cingular, and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by

by any action or inaction, the existence of this application and Order, the resulting pen-trap devices or this investigation, unless and until authorized by this Court, except that T-Mobile may disclose this Order to an attorney for T-Mobile for the purpose of receiving legal advice.

27. The United States further requests that the Order require T-Mobile not to notify any person, including the subscribers or customers of the account listed in Part I of Attachment A, of the existence of the Order or the disclosure of records pursuant to this Order until further Order of the Court. *See* 18 U.S.C. § 2705(b). In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. It could also seriously endanger the undercover agents and/or confidential informant. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

28. On or about August 18, 2014, the Honorable Joan Glazer Margolis granted the Government's Application for the Target Telephone (203) 525--0704, pursuant to 18 U.S.C §§ 3122 and 312, and 2703(d). That order has expired.

29. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. *See* 18 U.S.C. § 3123(d)(1). As explained above, these documents discuss an ongoing criminal investigation that is neither public

ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. It could also seriously endanger the undercover agents and/or confidential informant. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

28. On or about August 18, 2014, the Honorable Joan Glazer Margolis granted the Government's Application for the Target Telephone (203) 525)-0704, pursuant to 18 U.S.C §§ 3122 and 312, and 2703(d). That order expired on or about October 18, 2014..

29. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. *See* 18 U.S.C. § 3123(d)(1). As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their disclosure may seriously jeopardize that investigation.

30. The foregoing is based on information provided to me in my official capacity by agents of the ATF.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Anthony E. Kaplan
Assistant U.S. Attorney
Federal Bar No. ct08083
Office of the United States Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510
(203) 821-3700

Sworn and subscribed to me this 2nd day of December, 2014, in New Haven, Connecticut.

/s/
_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRCIT JUDGE

11

# ATTACHMENT A

I.  **The Account**

The Order applies to certain records and information associated with the following:

| Provider | Facility | Number or identifier | Owner, if known |
|---|---|---|---|
| Cingular | Cellular telephone numbers | 203-525-0704 203=528-1088 | unknown |

II.  **Records and Other Information to Be Disclosed**

Cingular is required to disclose the following records and other information, if available, to the United States for each account or identifier listed in Part I of this Attachment ("Account"), for the time period October 18, 2014 through the present:

    A.    The following information about the customers or subscribers of the Account:

        1.    Names (including subscriber names, user names, and screen names);
        2.    Addresses (including mailing addresses, residential addresses, business addresses, e-mail addresses and contact numbers);
        3.    Local and long distance telephone connection records;
        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
        5.    Length of service (including start date) and types of service utilized;
        6.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));
        7.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
        8.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.  All records and other information (not including the contents of communications) relating to the Account, including:

   1. Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses; and

   2. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers).